UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 05-50117 |
| versus | JUDGE HICKS |
| MEALVINE MELODY WALKER | MAGISTRATE JUDGE HORNSBY |

## REPORT AND RECOMMENDATION

### Introduction

Before the court is Defendant's Motion to Suppress (Doc. 12). Defendant argues that the seizure of Defendant's person and possessions was done without probable cause and that any statements made by Defendant were tainted by the illegal seizure and made without proper advisement of rights under Miranda. For the reasons that follow, it is recommended that Defendant's Motion to Suppress be denied.

### The Evidence

An evidentiary hearing was held on April 11, 2006. The evidence at the hearing establishes that officers of the mid-level narcotics unit of the Shreveport Police Department approached Defendant on January 5, 2005 after receiving a tip from a confidential informant ("CI"). Sgt. David Derrick had used the CI on three or four prior occasions and the CI was reliable. The CI told Sgt. Derrick that a black female named Mealvine Walker was selling cocaine in the 1800 block of Booker T. Washington Street. (Sgt. Derrick had made other narcotic arrests in that area.) The CI also told Sgt. Derrick that Defendant had cocaine inside

her black Ford Thunderbird. Sgt. Derrick testified that he knew Defendant to be involved in narcotics dealings, and he was personally familiar with her.

Officer Johnson was sent by the other officers to drive by the location described by the CI. Officer Johnson confirmed that a black female was standing around a black Ford Thunderbird parked in the 1800 block of Booker T. Washington Street. Officer Johnson did not make contact with Defendant, but she relayed what she saw to the other officers. Sgt. Derrick, Sgt. Mike Tong and Agents Sarpy and Bailey then went to that location.

Sgt. Derrick recognized Defendant and made contact with her. The other officers made contact with another person who was with Defendant. During a pat down search, the other person was discovered to have cocaine in his possession, and he was arrested.

Defendant was advised of her <u>Miranda</u> rights. Sgt. Derrick told Defendant that he had reason to believe she had narcotics in her vehicle. Walker denied that she had any narcotics in her car. Sgt. Derrick explained to Defendant that one of her options was to cooperate and avoid being arrested. Agent Sarpy then pulled Defendant aside and talked with her privately about cooperating. Sgt. Derrick also told Defendant that, if she did not consent to the search of her car, the officers were going to call the K-9 unit for a dog sniff of the car. At that point, according to Sgt. Derrick, Defendant stated "You'll just find it anyway." Sgt. Derrick then asked Defendant if the officers could search her car without a K-9, to which Defendant replied "Go ahead." Defendant then told the officers that there was some cocaine and a gun

in her purse. She gave the officers consent to retrieve the purse containing the drugs and the gun.

Sgt. Derrick opened the passenger door of the vehicle and recovered Defendant's purse from the floorboard. He opened the purse and found two plastic bags which contained individually packaged rocks suspected to be crack cocaine. He also found a loaded pistol. Defendant told Sgt. Derrick that she was selling cocaine because she could not find a job, and that she possessed the gun because it was a "dangerous business" and she needed the gun for protection.

Because Defendant agreed to cooperate, she was not arrested at the scene. Defendant's cooperation apparently ceased at some point, and federal charges were brought arising out of the incident.

**Analysis**

In the Government's initial brief, it took the position that the encounter with Defendant was consensual and did not require either probable cause or reasonable suspicion. However, the evidence does not support that argument. Four police cars containing five police officers arrived at the scene at essentially the same time. Agent Sarpy approached Defendant with his gun drawn. There is no evidence that any of the other officers drew their guns, and as soon as Agent Sarpy realized the situation was secure, he holstered his weapon. While Defendant was not told that she was under arrest, she was told that she was being detained for the purpose of the investigation. Her rights under Miranda were also read to her.

Based on the evidence at the hearing, the initial encounter with Defendant was not consensual.

Despite the fact that the encounter was not initially consensual, the officers had reasonable suspicion to believe that Defendant was selling drugs out of her car based on the CI's tip. Accordingly, the initial encounter with Defendant was a valid stop pursuant to Terry v. Ohio, 392 U.S. 1 (1968). Under Terry, officers may stop and briefly detain an individual for investigative purposes if they have reasonable suspicion that criminal activity is afoot. Goodson v. City of Corpus Christi, 202 F.3d 730, 736 (5th Cir. 2000). "Reasonable suspicion must be supported by particular and articulable facts, which, taken together with rational inferences from those facts, reasonably warrant an intrusion." United States v. Michelletti, 13 F.3d 838, 840 (5th Cir.1994) (en banc). "The officer, of course, must be able to articulate something more than an 'inchoate and unparticularized ... "hunch". ' The Fourth Amendment requires 'some minimal level of objective justification' for making the stop." United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) (citations omitted). Nevertheless, "[t]his reasonable suspicion standard is less demanding than the probable cause standard[.]" United States v. Sanders, 994 F.2d 200, 203 (5th Cir.1993).

The legality of police investigatory stops is tested in two parts. The court must first examine whether the officers' actions were justified at the inception. The court must then consider whether the officers' actions were related in scope to the circumstances that justified the stop. Terry, 392 U.S. at 19-20. In this case, the tip received from the CI was very

specific, and some of the information was independently confirmed by Officer Johnson before the stop was made. The CI had been used in the past and proved to be reliable. Thus, the evidence shows that the officers' actions were justified at the inception.

The officers' actions also were related in scope to the circumstances that justified the stop. The officers were familiar with Defendant and knew that she was involved in narcotics transactions in the past. The information from the CI indicated that Defendant was dealing drugs at the location in question. Under these facts, the officers were well within their right to investigate all that was related to the scope of the suspected drug dealing. United States v. Brigham, 382 F.3d 500 (5th Cir. 2004). They also were well within the law to request a K-9 unit. Illinois v. Caballes, 543 U.S. 405 (2005). Furthermore, the length of the stop (less than an hour) was not unreasonable given the circumstances presented.

Once the officers indicated they were going to request a K-9 sniff of Defendant's car, Defendant consented to the search of her car and, at that point, the encounter between the officers and Defendant became consensual. Sgt. Derrick's statement to Defendant that he was going to order a K-9 sniff does not automatically vitiate Defendant's consent. United States v. Robinson, 984 F.2d 911, 914 (8th Cir. 1993). Defendant was clearly aware of her right to refuse to consent, because she was familiar with law enforcement procedures and had previously refused to consent to a search during the stop in question. Defendant had been advised of her Miranda rights, and she understood those rights. Defendant was not under formal arrest at the time of the search or at the time the incriminating statements were made,

but it is clear that she was being detained during the investigation and she did not feel as though she was free to leave.

**Conclusion**

After considering the totality of the circumstances, <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218, 227 (1973) and <u>United States v. Kelly</u>, 981 F.2d 1464, 1470 (5th Cir. 1993), the undersigned finds that Defendant voluntarily consented to the search in question and voluntarily made the incriminating statements during a valid <u>Terry</u> stop. The evidence shows that proper police procedures were employed and that Defendant was advised of her rights and chose to waive those rights. There is no legal basis upon which to suppress the evidence in question.

Accordingly;

**IT IS RECOMMENDED** that Defendant's **Motion to Suppress (Doc. 12)** be **denied.**

**Objections**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Cr. P. 59(b), parties aggrieved by this recommendation have until **May 8, 2006** to file specific, written objections with the Clerk of Court. A party may respond to another party's objections no later than **May 10, 2006**. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  See  <u>Douglass v. U.S.A.A.</u>, 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED at Shreveport, Louisiana, this 27th day of April, 2006.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE